UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

JAMARIO MITCHELL,

             Plaintiff,                  Case No. 2:21-cv-109

v.                                         Honorable Jane M. Beckering

SARA SCHROEDER et al.,

             Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heidi Washington and Sara Schroeder. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's claims for failure to provide him dairy and meat as part of his religious diet; Plaintiff's RLUIPA and free exercise claims for money damages against Defendants in their official capacities; and Plaintiff's RLUIPA claims for money damages, declaratory and injunctive relief against Defendants in their personal

capacities. Plaintiff's claims that remain—claims based on the inclusion of soy in his religious diet against Defendants Nylander, Histed, Robenault, Dirschell, and Wellman—are the following: Plaintiff's personal capacity free exercise claims for damages; Plaintiff's personal and official capacity free exercise claims for prospective declaratory and injunctive relief; and Plaintiff's official capacity RLUIPA claims for prospective declaratory and injunctive relief.

## Discussion

I. **Factual Allegations**[1]

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues LMF Warden Sara Schroeder, LMF Business Manager B. Nylander,[2] LMF Food Services Director Unknown Histed,

---

[1] In addition to the factual allegations in his complaint, Plaintiff repeatedly argues that court orders issued in *Heard v. Caruso*, 2:05-cv-231, 2012 WL 951698 (W.D. Mich. Mar. 20, 2012, opinion and judgment), aff'd (Mar. 12, 2013), enforcement denied, No. 2:05-CV-231, 2014 WL 12833929 (W.D. Mich. July 17, 2014) and in *Ackerman v. Washington*, 4:13-cv-14137 (E.D. Mich.) (herein *Ackerman*) (Settlement Agreement, ECF No. 213, PageID.2176–2182 and Judgment, ECF No. 251, PageID.2618–2621) should apply to this case.

In 2012, the court in *Heard*, which was not a class action, ordered that Heard, a member of the Nation of Islam, be allowed access to the kosher diet under the then existing religious meals plans administered by the MDOC. 2012 WL 951698, at *8. In 2014, when Heard sought to enforce the court's order, the court denied his motion because Heard had failed to exhaust the specific claim he had raised in the motion. Additionally, the court acknowledged that the MDOC had replaced all of its religious meal plans with a vegan menu in any event. 2014 WL 12833929, at *2.

In *Ackerman*, which was a class action, the court ordered that all prisoners within the class be given a certified kosher meat and dairy meal on each of the Sabbaths and four Jewish holidays. *Ackerman* (Settlement Agreement, ECF No. 213 PageID.2176 and Judgment, ECF No. 251, PageID.2618). The class and subclass included all current and future prisoners in MDOC custody who, among other requirements, identified themselves as Jewish. *Id.* Neither of these cases help Plaintiff's cause, but in any event, Plaintiff's complaint is not the appropriate vehicle for any such argument. *See* Fed. R. Civ. P. 8 ((requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, since this complaint was filed, the Sixth Circuit Court of Appeals affirmed the lower court's decision, after a bench trial, that the MDOC's failure to give *Jewish* prisoners kosher meat and milk on the Sabbath and four Jewish holidays and cheesecake on the Jewish holiday of Shavout violated RLUIPA. *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021). Plaintiff has never claimed to be Jewish.

[2] In his complaint, Plaintiff mentions that another business manager, Sutinen, took over for Nylander, but makes no allegations against Sutinen.

LMF Chaplin Unknown Robenault, MDOC Special Activities Coordinator Adrian Dirschell, MDOC Dietician Kelly Wellman, and MDOC Director Heidi Washington.

Plaintiff alleges that on November 21, 2016, he was approved to receive kosher meals under MDOC Policy Directive (PD) 05.03.150 because he is a member of the Nation of Islam (NOI). Plaintiff alleges that his sincerely held religious beliefs forbid him from eating soy and soy by-products (hereinafter "soy"). This restriction is set forth in the NOI publication "How to Eat to Live" which, Plaintiff alleges, is familiar to the MDOC from previous litigation.

Plaintiff alleges that Defendant Washington established or maintained a policy or custom of recognizing that the Jewish kosher diet was an adequate substitute for the NOI diet. However, under the vegan meal plan, which the MDOC initiated in 2013 as a substitute for all religious diets,[3] Defendants Washington, Histed, Nylander, Wellman, Robenault, Schroeder and Dirschell sanctioned feeding NOI members entrée meals containing soy even though, Plaintiff contends, they knew eating soy conflicted with Plaintiff's religious beliefs. Additionally, even though Jewish kosher meal participants are given kosher meat and dairy meals, the Defendants facilitated or sanctioned the denial of these meals to African American kosher meal participants, including Plaintiff.[4]

In 2019, while housed at the Kinross Correctional Facility, Plaintiff was denied the meat and milk diet that is given to Jewish prisoners on the kosher diet. Defendant Washington

---

[3] *See Ackerman v. Washington*, 16 F.4th 170, 176 (6th Cir. 2021).

[4] Plaintiff identifies another prisoner, Blakeney, as an African American kosher meal participant who was denied the Saturday meat and milk entrée. Plaintiff is prohibited from raising any claims on Blakeney's behalf. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). Accordingly, the Court will disregard any allegations related to any claims that might be available to Blakeney or any other prisoner.

approved this practice of denying NOI prisoners meat and milk kosher diets. Instead, Plaintiff was served the vegan diet, which contains soy. Plaintiff sought administrative relief through the grievance process and requested an alternate diet. In his grievance, Plaintiff asserted that the vegan diet placed a substantial burden on his religion and was not related to a legitimate government interest.

When Plaintiff was transferred to LMF he was continued on the vegan diet pursuant to LMF's operating procedure (MDOC PD 05.03.150). Defendants knew or should have known that NOI members, including Plaintiff, cannot eat soy. Nevertheless, Defendants Histed, Wellman, Robenault, Nylander and Schroeder sanctioned feeding NOI members entrée meals containing soy eighteen times a month and have not considered reasonable alternatives such as eggs, powdered eggs, cheese, chicken or beef. After his transfer to LMF, Plaintiff continued to be denied the Jewish kosher diet which comes with meat and milk on Saturdays.

On May 6, 2020, Plaintiff wrote a letter to Defendant Nylander and sent copies of his letter to Defendant Histed and NOI representative Abdullah Muhammad. Plaintiff's letter included a list of foods that he could not eat because of his religious beliefs and a list of foods that he could eat, and requested an alternative diet. Plaintiff also advised Defendant Robenault that he wanted an alternate diet because the current vegan menu did not conform to the NOI religious dietary beliefs.

Approximately six months later, on November 19, 2020, Defendant Robenault responded to Plaintiff's request for an alternative menu by sending Plaintiff an "Alternative Religious Menu Request Questionnaire," which Plaintiff completed and returned the same day. Defendant Robenault forwarded Plaintiff's completed questionnaire to Defendant Dirschell but, Defendant Dirschell never acted on Plaintiff's request.

Because Plaintiff was denied the meat and milk given to Jewish kosher meal participants and because he was instead fed the vegan menu which included soy which he cannot eat without violating his religious beliefs, Plaintiff failed to eat approximately 1,000 calories a month, which Plaintiff made up by purchasing food from the prison store. However, because of some of the food items he purchased at the prison store, after an administrative hearing, Defendant Robenault removed him from the religious diet on March 31, 2021.

Plaintiff raises claims for violation of his First Amendment right to practice his religion, for violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000-cc *et seq.* and for violation of his rights under the equal protection clause of the Fourteenth Amendment

Plaintiff seeks declaratory and injunctive relief, and money damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

5

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  **A.**  **First Amendment free exercise and RLUIPA claim**

Plaintiff claims that Defendants interfered with his religious diet in violation of his rights under the First Amendment and RLUIPA. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To

6

establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious belief that avoiding soy is part of his religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his First Amendment free exercise claim. In relevant part, RLUIPA prohibits any government from

7

imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable")).

A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

8

Under the First Amendment or under RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened. Plaintiff contends that his religious exercise has been substantially burdened because he was forced to choose between religious adherence and an adequate diet because the vegan diet depended on the presence of soy to be nutritionally adequate, and Plaintiff cannot eat soy without violating the tenets of his faith.

Accepting as true Plaintiff's allegations that consuming soy violates the tenets of his faith, he must choose to either abandon his religious diet practices or have less than adequate nutrition from his religious diet. Requiring Plaintiff to make such a choice appears to be precisely the type of pressure that substantially burdens the free exercise of Plaintiff's religious practice. Accordingly, with respect to his belief that consuming soy violates his faith, Plaintiff has stated a claim for violation of his First Amendment free exercise and RLUIPA rights.

Plaintiff largely attributes the constitutional violations he has suffered to "Defendants" as a group. But, the factual allegations in his complaint make clear that not every Defendant has played an active role in every alleged violation of his religious rights. Focusing on his free exercise and RLUIPA claims—the refusal to accommodate his need for a soy-free diet[5]— narrows the field of potentially liable Defendants. Moreover, differences between the § 1983 and RLUIPA remedies impact whether Plaintiff may pursue relief against the potentially liable Defendants in their personal capacities, their official capacities, or both.

---

[5] Plaintiff further claims that he should be permitted to eat dairy and meat just as Jewish prisoners following the kosher diet are permitted to eat, appears to be, at its heart, an equal protection claim. Yet Plaintiff mentions the claim regarding dairy and meat as part of his "free exercise" and RLUIPA claims as well. Plaintiff has not alleged—as Ackerman alleged—that his religious beliefs compel him to eat dairy and meat. Therefore, Plaintiff has failed to allege that *not* eating dairy and meat imposes a substantial burden on his religious exercise. The Court accordingly concludes that Plaintiff has failed to state either a "free exercise" or RLUIPA claim based on Defendants' failure to provide dairy and meat in Plaintiff's diet.

1. **Active participation in the violations**

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's complaint, therefore, begs the question: who is responsible for the content of the vegan menu?

The general requirements for MDOC food service are set forth in MDOC Policy Directive 04.07.100 (Eff. Oct. 1, 2019).[6] Those requirements include three meals a day and hot food for two of those meals. *Id.*, ¶ G. All menus and all meals must satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council and menu planning must follow "The Dietary Guidelines for Americans." *Id.*, ¶ H. The Food Services Program Manager is responsible for issuing standardized regular diet menus to be used at all MDOC correctional facilities. *Id.*, ¶ J. The standard menu must be used to feed all offenders at a facility, unless there is an emergency. *Id.*, ¶ I. The food service policy identifies two other types of diets other than the regular diet: therapeutic diets, as described in MDOC Policy Directive 04.07.101; and religious diets, as described in MDOC Policy Directive 05.03.150.

The religious diet menu is the vegan menu. It includes soy. The policy does not explain who developed the religious diet menu; but, it provides: "An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary need of the prisoner." *Id.*, ¶ OO. The religious diet policy does not provide for changes to the religious diet menu other than changes necessary because the vegan menu does not meet the *religious* requirements of the prisoner.

---

[6] Plaintiff references certain MDOC policy directives in his complaint and other policy directives are referenced in the exhibits to the complaint.

The only other possible diet change referenced in the policy manual is the therapeutic diet. With regard to therapeutic diets, the policy directive provides:

> The Administrator of the Bureau of Health Care Services (BHCS) or designee shall maintain a Diet Manual identifying criteria for prescribing and providing therapeutic diets, specific to the MDOC needs. The MDOC diet manual is researched and written by the BHCS Registered Dietitians. This manual provides a guideline for circumstances under which therapeutic diets are to be ordered and medical nutritional services are to be provided.
>
> To comply with existing standards of health care, all therapeutic diets shall be ordered by the MP or dentist based on guidelines set forth in the MDOC Diet Manual. The menus for therapeutic diets will be written by BHCS Registered Dietitians in accordance with the MDOC Diet Manual. Therapeutic diet orders will be reviewed by BHCS Registered Dietitians to ensure appropriateness and make recommendations based on the guidelines of the MDOC Diet Manual. All therapeutic diets will be served as prescribed in the Prisoner Health Record (PHR) by the MP or dentist and in accordance with the MDOC Diet Manual and PD 04.07.100 "Offender Meals and Food Quality Assurance."
>
> \* \* \*
>
> Menu options such as vegetarian, pork-free or other dietary variances that are requested for religious or personal (non-medical) reasons are not therapeutic diets and should not be ordered as such.

MDOC Policy Directive 04.07.101, ¶¶ G, H, M. (Eff. Sept. 1, 2018). The policy directive makes clear that the preparation and service of the food is the responsibility "of Food Service within each institution" but the food is to be "prepared and served according to the therapeutic diet menus as written by [Bureau of Health Care Services] Registered Dieticians." *Id.*, ¶¶ P, Q.

Plaintiff's complaint offers few, if any, facts regarding the individual conduct of each defendant. Instead, Plaintiff refers to the seven individuals identified in the complaint as "Defendants" and alleges that all: "sanctioned" soy as an acceptable food for NOI members; "facilitated and sanctioned" the deprivation of meat and milk for African-American kosher diet participants; "knew or should have known" that NOI members cannot consume soy; "approved" feeding soy entrees to NOI members eighteen times a month; and failed to consider any reasonable

alternatives to soy. (Compl., ECF No. 1, PageID.4–6, 8.) "Summary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for [a constitutional violation]." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Based upon these policy directives, and in the absence of any individualized allegations in Plaintiff's complaint to the contrary, there are no facts alleged to support an inference that LMF Acting Warden Schroeder or MDOC Director Heidi Washington played an active role in requiring soy in the vegan diet, refusing to change the vegan diet to exclude soy, or failing to approve Plaintiff for an alternate diet that excluded soy.

Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

With regard to Heidi Washington, Plaintiff alleges generally that she is responsible for creating and enforcing policy and operating procedure. Moreover, as to Acting Warden Schroeder, Plaintiff alleges that she is responsible for operating LMF.[7] Plaintiff has failed to allege that Acting Warden Schroeder or MDOC Director Washington participated in active unconstitutional or RLUIPA-violating behavior with regard to his "substantial burden" claims. Accordingly, Plaintiff has failed to state a claim for violation of his First Amendment free exercise or RLUIPA rights against Defendants Washington and Schroeder.

According to Plaintiff's allegations, the exhibits attached to his complaint, and the policy directives referenced therein, the Defendants that remain—Nylander, Histed, Robenault, Dirschell, and Wellman (herein collectively the "Substantial Burden Defendants")—played some role in either the creation of the religious vegan diet or the denial of a deviation from it in Plaintiff's case. Accordingly, Plaintiff has identified active participation in the alleged constitutional and RLUIPA violations by the Substantial Burden Defendants.

### 2. Capacity and remedies

It is not clear if Plaintiff intended to sue the Substantial Burden Defendants in their personal or official capacities or both. He seeks damages as well as declaratory and injunctive relief.

---

[7] Plaintiff attaches to the complaint a Step II grievance appeal signed by Schroeder, finding no violation of any religious meal policies. The grievance itself does not appear to be attached to the complaint. Nevertheless, merely denying an administrative grievance is insufficient to impose § 1983 liability against Schroeder. *See Shehee*, 199 F.3d 300.

      **a.**      **Free exercise claims**

A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, the Court will dismiss the suit for monetary relief against the Substantial Burden Defendants with regard to the free exercise claims to the extent Plaintiff intended to sue them in their respective official capacities. Plaintiff's claim for monetary damages against the Substantial Burden Defendants in their respective personal capacities for violation of Plaintiff's free exercise rights may proceed.

Moreover, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will*, 491 U.S. at 71 & n.10). Therefore, to the extent Plaintiff intended to sue the Substantial Burden Defendants, in their respective personal ***and official*** capacities, for prospective declaratory or injunctive relief, Plaintiff's claims may proceed.

      **b.**      **RLUIPA**

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. Because the only potentially substantial "free exercise" burden alleged by Plaintiff is the refusal to accommodate his inability, as a member of NOI, to eat soy, that is the only potentially substantial RLUIPA burden as well.

Plaintiff's complaint seeks damages, declaratory relief, and injunctive relief. He does not indicate which of his claims warrants each kind of relief. RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), aff'd *Sossamon v. Texas*, 563 U.S. 277 (2011)[8]; *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[9] Therefore, Plaintiff's RLUIPA claims for damages, declaratory, or injunctive relief against the Substantial Burden Defendants in their personal capacities are properly dismissed.

RLUIPA also does not permit damages claims against prison officials in their official capacities. As noted above, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will,* 491 U.S. at 71 (1989); *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of

---

[8] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[9] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

"appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

Sovereign immunity does not bar a suit seeking declaratory or injunctive relief against the Substantial Burden Defendants in their official capacities. *See Ex Parte Young*, 209 U.S. at 159–60. The *Ex Parte Young* exception, however, is limited. It applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68–73 (1985). Plaintiff seeks declaratory or injunctive relief that is prospective; therefore, his RLUIPA claim may proceed against the Substantial Burden Defendants in their official capacities.

**B.** **Equal protection**

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

In a section of the complaint regarding sovereign immunity, Plaintiff alleges that his equal protection rights have been violated, but his allegations are conclusory. They consist of nothing more than a statement that "his right to be free from discrimination and to equal protection of the law were clearly established during the incidents alleged in the complaint." (Compl., Doc. No. 1, PageID.10). Conclusory allegations of unconstitutional conduct without specific factual

allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff's factual allegations do not implicate his equal protection rights. An "equal protection" plaintiff must be treated differently to similarly situated comparators. Those comparators must be similarly situated "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff brining an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff is being treated differently than other inmates and the differing treatment is based on religion. Therefore, the different treatment is premised on a protected right. While Plaintiff is being treated differently than Jewish inmates post-*Ackerman*, Plaintiff is not being treated differently than any similarly situated comparator inmates, that is, all inmates who do not observe the Jewish faith. Under MDOC policy, all non-Jewish inmates who observe religions that require dietary restrictions are treated the same. And, though Plaintiff is being treated differently than inmates from other religions that do not have dietary restrictions or from inmates that do not practice any religion, it is only because he asked to be treated differently. He asked to receive a NOI diet. For these reasons, the Sixth Circuit has rejected the claim Plaintiff presents: that a vegan diet violates equal protection rights. *See Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017) ("He is not being treated disparately from similarly situated prisoners; the vegan meal available to him is the same meal that is available to Jewish[10] and Buddhist prisoners,

---

[10] *Davis* was decided before *Ackerman.*

and it is halal. All of the prisoners are provided with meals that comport with the dietary restrictions of multiple faiths.") (internal citation omitted).

For these reasons, Plaintiff has failed to state a claim for violation of his equal protection rights.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schroeder and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Nylander, Histed, Robenault, Dirschell, and Wellman—the Substantial Burden Defendants: Plaintiff's claims for failure to provide dairy and meat as part of Plaintiff's religious diet, Plaintiff's claims for money damages against Defendants in their official capacities, and Plaintiff's RLUIPA claims for money damages, declaratory and injunctive relief against Defendants in their personal capacities. Plaintiff's claims that remain, all based on the inclusion of soy in his religious diet, are the following: Plaintiff's free exercise claims for damages against the Substantial Burden Defendants in their personal capacities; Plaintiff's free exercise claims for prospective declaratory and injunctive relief against the Substantial Burden Defendants in their personal and official capacities; and Plaintiff's RLUIPA claims for prospective declaratory and injunctive relief against the Substantial Burden Defendants in their official capacities.

An order consistent with this opinion will be entered.

Dated: January 28, 2022          /s/ Jane M. Beckering
                                 Jane M. Beckering
                                 United States District Judge