UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMARIO MITCHELL #386239,                          Case No. 2:21-cv-00109

        Plaintiff,                                 Hon.  Jane M. Beckering
                                                   U.S. District Judge

   v.

SARA SCHROEDER, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses the motion for summary judgment filed by Defendant.   (ECF No. 106.)   This R&R also addresses Plaintiff's motion to transfer the trial to Grand Rapids, Michigan.[1]   (ECF No. 115.)

State Prisoner Jamario Mitchell filed this action, pursuant to 42 U.S.C. § 1983. Mitchell's remaining claim is that as a member of the Nation of Islam (NOI) he is required to eat a religious diet.   Mitchell says that Defendant Special Activities Coordinator Adamson violated his First Amendment right to practice his religious beliefs by denying his request for an alternative religious meal free of soy and soy byproducts.

---

[1]    A jury trial is currently set for September 9, 2024, in Marquette, Michigan. (ECF No. 109.)   Plaintiff moves to transfer the trial to Grand Rapids, Michigan for the convenience of the parties.

Adamson moves for summary judgment on Mitchell's First Amendment claim. Adamson considered Mitchell's July 2019 request for an alternative religious diet, but he made the recommendation to deny the request based upon Mitchell's continued purchase of foods that violated his alleged religious beliefs. (ECF No. 107-4, PageID.638-639 (Adamson's affidavit).)

In the undersigned's opinion, there are no genuine issues of material fact with respect to Mitchell's remaining claim against Defendant Adamson. Mitchell's claim necessarily fails because the denial of his request for an alternative religious diet was properly based upon Mitchell's history of purchasing foods that did not conform with his alleged religious beliefs, and Adamson's recommendation to deny the request was reasonably related to the penological interests of controlling costs and maintaining discipline. It is respectfully recommended that the Court grant Defendant Adamson's motion for summary judgment.

## II.  Factual Allegations

Mitchell alleges that as a long-time NOI member, he follows the dietary instructions from the book "*How To Eat To Live*." (ECF No. 49, PageID.308.) Mitchell says that it is his sincere belief that he cannot eat soy, soy byproducts, peanut butter, corn, corn bread, grits, greens, and all beans except for navy beans. (*Id*.) Mitchell asserts that because the MDOC does not offer a NOI diet, he was placed on the Kosher diet in November of 2016. (*Id*.) Mitchell says that because he was still getting food items that violate his religious beliefs, he made a request for an alternative diet. (*Id*.) After Mitchell was transferred to Kinross Correctional

Facility, Defendant Adamson made a recommendation in 2019 to Deputy Director McKee and Assistant Deputy Director Heinritz to deny Mitchell's request for an alternative diet.   (*Id.*, PageID.208-309.)   The request was denied.   (*Id.*, PageID.309.)   According to Mitchell, this forced him to go without eating 70-80 percent of his meals due to the prohibited food items in his food trays that contaminated his meals.   (*Id.*)

Mitchell alleges that Defendant Adamson violated his First Amendment rights by influencing, "the sole decision maker" McKee to deny the request for an alternative meal.[2]   (*Id.*, PageID.311.)

### III.   Procedural History

Mitchell's original complaint asserted claims against multiple Defendants arising out the alleged denial of a religious meal diet free of soy or soy by-products.[3] (ECF No. 1.)   Mitchell stated that he received Kosher meals because he was a member of the NOI.   (*Id.*)   Mitchell also alleged that he was not receiving dairy and meat with his meals like the Jewish prisoners who also received Kosher meals.   (*Id.*)

On January 28, 2022, the Court issued an opinion and order dismissing Defendants Washington and Schroeder.   (ECF Nos. 8 and 9.)   The Court dismissed

---

[2]    At some point Mitchell was transferred to Alger Correctional Facility.   In 2020, Mitchell made another request for an alternative diet.   (*Id.*)   This time, Special Activities Coordinator Dirschell made a recommendation to deny Mitchell's request, and Deputy Director Bush made the decision to deny Mitchell an alternative diet.   (*Id.*)   Mitchell explains that he began having problems with his food trays while he was at Alger Correctional Facility.

[3]    The complaint is entitled "Plaintiff's Verified Complaint for Damages, Declaratory and Injunctive Relief."   (ECF No. 1.)     Mitchell, however, did not verify his original complaint.

Mitchell's claims based on the failure to include dairy and meat in his religious diet, claims under the Equal Protection Clause of the Fourteenth Amendment, claims arising under the Religious Land Use and Institutionalized Persons Act (RLUIPA) for money damages against Defendants in their official capacities, and RLUIPA claims against Defendants in their personal capacities.   (*Id.*)    The surviving claims were based on Mitchell's allegations that soy was included in his religious diet. (ECF No. 8, PageID.92.)   Those claims included free exercise claims for damages against Defendants in their personal capacities, free exercise claims for prospective declaratory and injunctive relief against Defendants in their personal and official capacities, and RLUIPA claims against Defendants in their official capacities.

After the Court issued the January 28, 2022 opinion, Mitchell filed a motion for leave to amend his complaint to add new Defendants, dismiss some Defendants, and to modify some of his claims.   (ECF No. 31.)   On February 3, 2023, the Court granted Mitchell's motion for leave to file an amended complaint.   (ECF No. 47.)   In granting the motion, the Court stated that the amended complaint would not revive the dismissed claims.   (*Id.*, PageID.296.)

On February 3, 2023, Mitchell filed his amended complaint.[4]   (ECF No. 49.) The only remaining claims based upon the allegations in the amended complaint and the Court's previous opinions and orders, are for First Amendment violations for monetary damages and for injunctive relief.   Mitchell claims that Defendants

---

[4]    The amended complaint is unverified.   After Mitchell filed his amended complaint, Defendants Robenault and Wellman were dismissed from this action.

violated his right to exercise his religious beliefs by failing to provide him with a religious meal free of soy and soy by-products.

On January 17, 2024, the Court granted summary judgment in favor of Defendants Bush, Heinritz, McKee, Dirschell, Nylander and Histed, and dismissed them from this case.  (ECF No. 90.)  Defendant Adamson, the remaining Defendant, filed the motion for summary judgment that is the subject matter of this R&R.

## IV.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V.  Religious Diet

Mitchell's claims center around his alleged religious beliefs and dietary restrictions.   In analyzing these claims, it is helpful to understand the MDOC policy and procedure surrounding religious diets.   The administration of religious diets is governed by MDOC Policy Directive 05.03.150: *Religious Beliefs and Practices of Prisoners* (effective Oct. 1, 2019).   The MDOC employs a universal vegan religious diet.   MDOC Policy Directive 05.03.150 at ¶ OO.   The diet conforms to both Kosher and Halal religious tenets.   *Id.*

If the vegan religious diet does not conform to a prisoner's individual's religious dietary beliefs, the prisoner may request an alternative diet from the Deputy Director of the MDOC.   MDOC Policy Directive 05.03.150 at ¶ OO.   The Special Activities Coordinator helps the Deputy Director determine whether an alternative diet is necessary to conform to an individual's religious dietary beliefs.   (ECF No. 107-4, PageID.638 (Adamson Affidavit).)

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."   U.S. Const. amend I.   The right to freely exercise one's religion is applicable to the States through the Fourteenth Amendment.   *See Cantwell v. Conn.*, 310 U.S. 296, 303 (1940).

To establish that this right has been violated, each plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme

6

of things," (2) that his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief.  *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).

The Supreme Court has observed that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner v. Safley,* 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  But "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Wolfish*, 441 U.S. at 545.  Operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  *Turner*, 482 U.S. at 85.

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id.* at 89.  This

7

standard represents a "'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *Flagner*, 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors as relevant in determining the reasonableness of a challenged prison regulation:

1. whether there is a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. whether accommodating the alleged right would have an undue impact on guards and other inmates, or the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Defendants bear the initial burden of articulating a valid, rational connection between the challenged action and the legitimate governmental interest that motivated it.   This burden is "slight, and in certain instances, the connection may be a matter of common sense."   *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012).   If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably

related to a legitimate penological interest.  *Flagner*, 241 F.3d at 484.   The *Turner*

standard is not a "least restrictive alternative" test requiring prison officials "to set

up and then shoot down every conceivable alternative method of accommodating the

claimant's constitutional complaint."  *Turner*, 482 U.S. at 90-91.   Instead, the issue

is simply whether the policy at issue is reasonably related to a legitimate penological

interest.  *Flagner*, 241 F.3d at 484.

At the outset, the undersigned notes that there is a dispute as to the sincerity

of Mitchell's religious dietary beliefs with respect to soy and soy byproducts.

Mitchell says that he has adopted the Nation of Islam diet instructed by Elijah

Muhammad in the book "*How to Eat to Live*."   Mitchell further alleges that the book

"instructed the followers of the NOI, that if they could not adhere to the dietary

instructions that the Kosher diet would suffice."   (ECF No. 49, PageID.308.)[5]

Furthermore, Mitchell's commissary records reflect many purchases contrary to

Mitchell's alleged religious dietary beliefs.  (ECF No. 107-6.)   But ultimately, the

sincerity of Mitchell's religious dietary beliefs is a question of fact that this Court

cannot resolve at the summary judgment stage.  *United States v. Seeger*, 380 U.S.

163, 185 (1965).   Be that as it may, it is the undersigned's opinion that the sincerity

---

[5]      It is not clear from the record whether the restrictions Mitchell adopted from
"*How to Eat to Live*" are religious in nature, health-conscious in nature, or both.   Of
course, a prison is not required to consider an accommodation for a religious
individual's "purely secular" beliefs.  *Bennett v. Burt*, No. 1:16-CV-1203, 2016 WL
7034240, at *3 (W.D. Mich. Dec. 2, 2016) (first quoting *Mosier v. Maynard*, 937 F.2d
1521, 1526 (10th Cir. 1991); then citing *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir.
1999); and then citing *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987))

of Mitchell's religious dietary beliefs is immaterial under the circumstances presented.

Even assuming that Mitchell's religious dietary beliefs are sincere, there is no dispute as to Defendant's justification for recommending the denial of Mitchell's request for an alternative religious diet.   Mitchell reported that his sincerely held religious beliefs prohibited him from consuming soy, soy byproducts, peanut butter, corn, corn bread, grits, greens, and all beans except for navy beans.    However, Mitchell's commissary records revealed that he regularly purchased non-conforming foods.   (ECF No.107-6.)   Mitchell admits to these purchases but says that he bought the food items for bartering purposes, and that he never consumed them.   (ECF No. 116, PageID.739.)   In fact, Mitchell argues that his purchases of the prohibited food items are not relevant until he was approved for a religious meal.   Mitchell rationalizes his reasoning for purchasing prohibited food by using faulty logic: "Plaintiff['s] religious tenets nor any prison rule prohibits Plaintiff from buying possessing items prior to being approved for a Kosher diet.   It only applies after a prisoner is approved."   (*Id.*, PageID.739.)

This Court has consistently determined that "[i]t is reasonable for prison officials to deny special religious diets to prisoners who consume *or purchase* food which is inconsistent with the requested religious diet."   *O'Connor v. Leach*, No. 1:18-CV-977, 2020 WL 838084, at *3 (W.D. Mich. Jan. 27, 2020) (emphasis added) (quoting *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009)), *R&R adopted*, No. 1:18-CV-977, 2020 WL 2187814 (W.D. Mich. May 6, 2020); *see also Ewing v. Finco*,

No. 1:17-CV-505, 2019 WL 8105992, at *8 (W.D. Mich. Sept. 18, 2019) (quoting *Perreault v. Mich. Dep't of Corr.*, No. 1:16-cv-1447, 2018 WL 3640356, at *3 (W.D. Mich. Aug. 1, 2018)), *R&R adopted*, No. 1:17-CV-505, 2019 WL 6485869 (W.D. Mich. Dec. 3, 2019).    Indeed, multiple legitimate penological interests justify this practice. The MDOC has a legitimate interest in controlling costs, and religious meals are expensive.    *See O'Connor*, 2020 WL 838084, at *3 (citing *Green v. Tudor*, 685 F.Supp.2d 678, 698 (W.D. Mich. 2010)); *Perreault*, 2018 WL 3640356, at *3 (same). Thus, the MDOC has a reason to deny religious meals to a prisoner who does not appear to be adhering to a religious diet.    Furthermore, the MDOC has a legitimate interest in maintaining discipline within the prison, and "[p]ermitting a prisoner to participate in a religious diet program when he is consuming or purchasing food in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions."    *O'Connor*, 2020 WL 838084, at *3; *see also Ewing*, 2019 WL 8105992, at *9 (quoting *Perreault*, 2018 WL 3640356, at *3).    Accordingly, in the undersigned's opinion, Defendants have satisfied the first *Turner* factor (whether there is a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it).    The undersigned now turns to the remaining *Turner* factors.

In the undersigned's opinion, these factors together weigh in Defendants' favor.    Mitchell alleged that his meals were contaminated by prohibited food items, thus preventing him from eating all his meals.    (ECF No. 49, PageID.304.)    Despite

his claim otherwise, Mitchell can supplement his vegan meals with food from the commissary that adheres to his beliefs.   Further, he can reapply for an alternative diet once per year because the denial of his request was not permanent. *Ewing*, 2019 WL 8105992, at *9; *Perreault*, 2018 WL 3640356, at *3.

 Moreover, approving inmates for individualized religious diets while allowing them to purchase non-conforming foods from the commissary without consequence would significantly impact the allocation of prison resource*s.   See Berryman*, 343 F. App'x at 6.   And Mitchell does not point to a ready alternative that would accommodate his rights at a *de minimis* cost to valid penological interests.   *Id.* Accordingly, the undersigned recommends that the Court grant Defendant Adamson's motion for summary judgment and dismiss his remaining claim.

## VI.   Qualified Immunity

Defendant Adamson also argues that he is entitled to dismissal of the complaint against him based upon qualified immunity.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"

12

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry.   *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).   First, the court must "determine if the facts alleged make out a violation of a constitutional right."   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).   Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."   *Id.* (citing *Pearson*, 555 U.S. at 232).   A court may address these steps in any order.   *Id.* (citing *Pearson*, 555 U.S. at 236).   A government official is entitled to qualified immunity if either step of the analysis is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.   *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court considers the state of the law at the second step.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."   *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by

13

"controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.  *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). Here, Mitchell has failed to cite any clearly established law that could show that

Defendant Adamson violated his First Amendment rights under similar factual circumstances.

## VII.  Recommendation

Accordingly, it is recommended that the Court grant Defendant Adamson's motion for summary judgment and dismiss this case.

It is further recommended that the Court deny Mitchell's motion to transfer the trial to Grand Rapids as moot.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    June 28, 2024                          /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U.S. MAGISTRATE JUDGE